IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JEANNIE GEISER, as Administratrix
of the Estate of J.G., deceased
and JEANNIE GEISER, individually,

    Plaintiff,

v.                              Civil Action No. 5:10CV21
                                         (STAMP)
SIMPLICITY, INC. a/k/a
SIMPLICITY FOR CHILDREN,
SFCA, INC. d/b/a SIMPLICITY, INC.
a/k/a SIMPLICITY FOR CHILDREN,
WAL-MART STORES EAST, LP,
WAL-MART STORES, INC.,
and JOHN DOE(S) MANUFACTURER/
DISTRIBUTOR/WHOLESALER,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**[1]
**AND DISMISSING WITHOUT PREJUDICE,
THE UNSERVED JOHN DOE DEFENDANTS**

I.  Procedural History

The plaintiff filed this civil action in the Circuit Court of Ohio County, West Virginia, alleging product liability, negligence, breach of warranty and punitive damages claims against multiple defendants for an alleged wrongful death of an infant arising from the manufacture and sale of an allegedly defective crib.  All

---

[1] At a pretrial conference previously held in this case, this Court indicated to the plaintiff and the Wal-Mart defendants that it intended to rule on the Wal-Mart defendants' motion for summary judgment as outlined below.  This memorandum opinion and order confirms and sets forth in more detail the rulings announced at that conference.

parties were successfully served and brought into the case except the John Doe Manufacturer/Distributor/Wholesaler defendants. This Court later dismissed all claims against defendants Graco Children's Products, Inc. and Newell Rubbermaid, Inc. by stipulation of the parties, granted a motion to dismiss in favor of Blackstreet Capital Management, Inc. and Blackstreet Capital Partners, LLC, and granted a motion for summary judgment declaring that third-party intervenor James River Insurance Company was not obligated to provide a defense or indemnity for defendant Simplicity, Inc., and was thus dismissed from this case. Following this dismissal, counsel for Simplicity, Inc. was permitted to withdraw, and Simplicity, Inc. has since been without counsel.[2]

Defendants Wal-Mart Stores, Inc. and Wal-Mart Stores East, LP ("the Wal-Mart defendants") subsequently filed the instant motion for summary judgment, asking this Court to dismiss the plaintiff's entire complaint on the grounds that no genuine issue of material fact as to the claims made against the Wal-Mart defendants can be established. The plaintiff filed a timely response, and the Wal-Mart defendants replied. This motion is now fully briefed and ripe

---

[2] Corporations must be represented by an attorney in federal court. See Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distribution Co., 748 F.2d 602, 609 (11th Cir. 1984). As Simplicity, Inc. has been unrepresented by counsel since this Court's August 10, 2011 order permitting its prior counsel to withdraw, Simplicity Inc. has been unable, and will continue to be unable to appear in any proceeding before this Court until such time as counsel is obtained.

for disposition by this Court. For the reasons set forth below, the Wal-Mart defendants' motion for summary judgment is granted with regard to the negligence, breach of warranty, and punitive damages claims. However, the motion is denied with regard to the plaintiff's strict products liability claims and also denied based upon the Wal-Mart defendants' contention of spoliation.

## II.  Facts

In January 2006, prior to the birth of their son J.G., the plaintiff and her husband purchased a crib manufactured by Simplicity, Inc. at a Wal-Mart store in St. Clairsville, Ohio. The crib was purchased unassembled, and the Geisers assembled it together in J.G.'s room by following the directions enclosed with the crib. In September 2007, Simplicity issued a recall on certain component parts of the drop-side rail of the plaintiff's crib because the drop-side could detach from the crib and create a gap and lead to entrapment. The plaintiff and her husband then requested the drop-side replacement track kit, retrofit kit, and accompanying directions from Simplicity and disassembled the crib. After receiving the retrofit kit, the Geisers reassembled the crib together by following the directions that accompanied the retrofit kit.

On January 15, 2008, the plaintiff, a few hours after placing J.G. into his crib for a nap, discovered that J.G.'s head and neck were wedged between the headboard and the first rail of the

stationary side of the crib.  J.G. was suffocated as a result of his head and neck slipping between the rail and the headboard, and did not survive his injuries.  Following J.G.'s death, a missing bolt was discovered on the back of the stationary rail of the crib, but the bolt was not recovered by investigators.  It is undisputed that J.G.'s death was the result of this machine screw becoming dislodged from the housing unit.

On the evening of January 15, 2008, the plaintiff's husband destroyed the crib in which J.G. was suffocated when, according to the plaintiff, she was not present in the home.  The plaintiff further maintains that she was unaware that her husband was going to destroy the crib, but when she returned home the following day and saw that he had, she helped him to clean up the pieces that remained by carrying them to the garbage behind the Geiser home.

### III.   Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>     (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
>     (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of

4

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Id. at 256.  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

    In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

In their motion for summary judgment, the Wal-Mart defendants advance three bases for their argument that this plaintiff's claims should be dismissed: (1) that, based upon the evidence available, the plaintiff cannot establish a genuine dispute of fact as to the Wal-Mart defendants' liability under any theory of recovery advanced in the complaint; (2) that the plaintiff engaged in spoliation of evidence, and thus, her claims must be dismissed; and (3) that the plaintiff has failed to establish evidence to support a punitive damages claim against the Wal-Mart defendants.

A. Negligence and Breach of Warranty

As an initial matter, the plaintiff has indicated that she does not dispute that there is no genuine issue of material fact as to the negligence and breach of warranty claims with regard to the

Wal-Mart defendants. As such, this Court will grant summary judgment for the Wal-Mart defendants as to those claims without discussion. However, with regard to the strict products liability claims, this Court finds that sufficient evidence has been established to support the plaintiff's claims to allow a reasonable juror to conclude that liability exists on the part of the Wal-Mart defendants.

B.   Strict Products Liability

Strict products liability exists in West Virginia law as an avenue by which consumers injured by products can receive compensation for their injuries without the burden of having to prove negligence on the part of the manufacturer. Similarly, because the manufacturer of a product may not be available or even known to the plaintiff, strict products liability also "extends to those in the product's chain of distribution. Thus, an innocent seller can be subject to liability that is entirely derivative simply by virtue of being present in the chain of distribution of the defective product." Dunn v. Kanawha Co. Bd. of Educ., 194 W. Va. 40, 46 (1995). Still, liability in strict products liability is not absolute. Instead, rather than having to prove actual fault on the part of the manufacturer, a plaintiff in a strict products liability case has the burden of proving defect of the product. Morningstar v. Black & Decker Mfg. Co., 162 W. Va. 857, 888 (1979).

Strict products liability law provides for liability for defective products based upon three categories of defect: "design defectiveness; structural defectiveness; and use defectiveness arising out of the lack of, or the inadequacy of, warnings, instructions and labels." <u>Id.</u> All three of these categories require the plaintiff to prove defectiveness of the product in some capacity, but in design and structural defect theories, the defect lies in the "physical condition of the product," while in use defect, the inquiry focuses on defect of the instruction, warning or label. <u>Id.</u> In her complaint, the plaintiff alleges design defect and use defect of the crib against the Wal-Mart defendants.

    1.   <u>Design Defect</u>

The Wal-Mart defendants argue that because the crib was destroyed and the missing machine screw never recovered, summary judgment in their favor as to the design defect claim is appropriate. While it is conceded by all parties that the cause of J.G.'s death was the bolt which was missing from the joint of the back headboard and the stationary wall, the manner by which the bolt became dislodged is at issue, and is the main point of alleged defect in the case.

However, because the crib was destroyed and the bolt never recovered, any evidence to this issue is in the form of testimony of Mr. and Mrs. Geiser as to their experiences with and upkeep of the crib, and in the form of expert testimony that is offered by

the plaintiff's expert regarding his opinions following an inspection of exemplar cribs.  The Wal-Mart defendants maintain that, because the plaintiff has no physical evidence of defect of the crib and can only offer circumstantial evidence of the same, as a matter of law, she cannot prove design defect.  This Court disagrees.

The West Virginia Supreme Court has repeatedly allowed plaintiffs in strict products liability actions to proceed to a jury when no physical evidence was available and defect could only be inferred through circumstantial evidence, when it can be shown that the malfunction of the product is one that would normally only happen as a result of a defect.  See Anderson v. Chrysler, 184 W. Va. 641 (1991); Bennett v. ASCO Servs., 218 W. Va. 41 (2005); and Aliff v. Carrier Corp., 2011 W. Va. LEXIS 114 (W. Va. Apr. 1, 2011).  This concept is known as the "malfunction" theory of proving defect.  The standard for proving malfunction theory was clearly set forth by the West Virginia Supreme Court when it adopted this theory in Anderson:

> This theory encompasses nothing more than circumstantial evidence of product malfunction . . . .  It permits a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction . . . .  It thereby then relieves the plaintiff from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from the evidence of the malfunction, of the absence of abnormal use and or the absence of reasonable, secondary causes.

184 W. Va. at 645

The Wal-Mart defendants argue that the plaintiff's expert's opinion regarding the reason that the bolt became dislodged cannot be considered when deciding this motion, because this opinion is not admissible in evidence. Without discussing or deciding in this opinion whether or not this argument is valid, this Court finds it unnecessary to consider this evidence at this time because the testimony of the Geisers is sufficient evidence to allow this plaintiff to present her case to a jury.

In order to defeat summary judgment under malfunction theory, it is not necessary for a plaintiff "to conclusively eliminate all possible contributing causes other than a defect for an accident. Instead, a plaintiff is only required to submit evidence that has the capacity to sway the outcome of the litigation." Bennett, 218 W. Va. at 49. This Court believes that the plaintiff has met this burden with the Geisers' testimony alone. Based upon the evidence presented to this Court in the briefing of this motion, the Geisers have testified at depositions and intend to testify at trial regarding all of the above-outlined elements of malfunction theory. First, Mr. and Mrs. Geiser have both testified that they assembled, disassembled and reassembled the crib according to the directions included with the crib. Further, they both testified that all parts were present and they assembled it correctly. Secondly, they both offered testimony that the crib was never moved from J.G.'s room at any time before J.G.'s death. Mrs. Geiser even testified

that she never moved the crib to vacuum, but rather cleaned around it. The Geisers also say that J.G. was unable to, and had never, climbed out of the crib. Finally, Mrs. Geiser stated that she shook the crib and visually inspected it regularly in order to discern whether it had become unstable or unsafe for any reason.

The Wal-Mart defendants argue that this testimony, without corroborating evidence, is insufficient to create a genuine dispute of material fact. However, Federal Rule of Civil Procedure 56(c) does not allow a court to make credibility determinations, to weigh the evidence, or to draw "legitimate inferences from the facts." Anderson, 477 U.S. at 255. Likewise, in order to proceed to trial, the non-movant is not required to prove all material facts which she claims exist, but rather, must only present "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id. at 248-49. While the plaintiff may not be able to ultimately prove her case by a preponderance of the evidence if it is based solely upon the testimony of the Geisers, such a determination at this point would require this Court to make a determination regarding the credibility of that testimony; something that it is specifically not permitted to do at this juncture. Thus, the Wal-Mart defendants' motion for summary judgment on the plaintiff's design defect claim is denied.

2. <u>Use Defect</u>

Similarly, the plaintiff has presented sufficient evidence of use defect to defeat summary judgment. The Wal-Mart defendants argue that the instructions for the crib contained a warning that the bolts needed to be tightened periodically so that they would not loosen through use of the crib. They further contend that this warning was adequate, as a matter of law, to inform the plaintiff of the danger that the bolts in the crib could become loose with use.

A manufacturer has a duty to adequately warn users of its products of dangers which it can reasonably foresee, which may be present when the product is used, even if the product was designed as safely as is reasonable, or even possible. <u>Ilosky v. Michelin Tire Corp.</u>, 172 W. Va. 435, 442. The standard for adequacy of a warning is the level of warning that "the reasonably prudent manufacturer would accomplish in regard to the safety of the product, having in mind the general state of the art of the manufacturing process, including design, labels and warnings, as it relates to the economic costs, at the time the product was made." <u>Morningstar</u>, 162 W. Va. at 886. Further, "the determination of whether a defendant's efforts to warn of a product's dangers are adequate is a jury question." <u>Ilosky</u>, 172 W. Va. at 443.

The Wal-Mart defendants here readily admit that an attempt was made by the manufacturer of the Simplicity crib to warn consumers

12

of the dangers of the bolts coming loose on the crib through use. The plaintiff, however, contends that this warning was inadequate to protect users from such dangers. The determination of the adequacy of the warnings to this end which were included in the crib's instructions is a jury question and is not an appropriate determination for this Court to make at this time. As such, the Wal-Mart defendants' motion for summary judgment is likewise denied for the plaintiff's use defect claim.

C.  Spoliation

The Wal-Mart defendants additionally argue that the plaintiff's complaint must be dismissed because she engaged in spoliation of evidence critical to the claims. Spoliation is an evidentiary concept which grants district courts the discretion to impose a wide variety of sanctions when a party can be shown to have destroyed or materially altered evidence, or to have failed "to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. GMC, 271 F.3d 583, 590 (4th Cir. 2001). In order for spoliation to exist, a court must determine that a party actually destroyed, altered or failed to preserve evidence, and that they did so in anticipation of pending or reasonably foreseeable litigation. Further, the power to impose sanctions based upon spoliation is grounded in the courts' inherent power to "control the judicial process and litigation, but the power is limited to that necessary to redress

conduct 'which abuses the judicial process.'" Id. (quoting Chambers v. Nasco, Inc., 501 U.S. 32, 45-46 (1991)).

Based upon the evidence presented to this Court, it does not appear that the plaintiff engaged in conduct which can reasonably be deemed to be spoliation, or that any abuse of the judicial process has taken place. It is true that, on the evening of J.G.'s death, Mr. Geiser destroyed the crib -- arguably the most important and valuable piece of evidence in this case -- thus making it unavailable to the Wal-Mart defendants for the purposes of litigation. Further, it is also true that, upon returning home the next day and finding that her husband had destroyed the crib, Mrs. Geiser helped to dispose of the pieces that remained by placing them in the garbage behind the home. However, this Court does not believe that Mrs. Geiser's acts of aiding in the clean up of the pieces, which she describes as a "a mangled mess" of "pieces of wood and metal," qualifies as destroying, materially altering, or failing to retain evidence, in light of the fact that Mr. Geiser had destroyed the crib the evening before.

Further, even if such actions could be construed as failing to retain evidence, this Court cannot reasonably charge Mrs. Geiser with anticipating litigation at the time that the crib was disposed of. When Mr. and Mrs. Geiser cleaned up the crib and carried it to the garbage, it was less than 24 hours after J.G.'s death. Both of the Geisers express that they were severely distressed at the loss

J.G. at this time, and this Court finds it likely that their thoughts and emotions had not turned further than the grief that they felt in the immediate aftermath of their son's tragic death. No lawyers had been contacted at this time, nor has any evidence been presented that the Geisers were even aware that a lawsuit was possible. The Wal-Mart defendants point to <u>Silvestri</u> as support for their contention that spoliation occurred in this case because, in <u>Silvestri</u>, the Fourth Circuit affirmed a dismissal based upon spoliation when a plaintiff destroyed "the sole piece of evidence in [the] case." <u>Id.</u> at 592. However, this similarity is the only place where the facts of that case and the instant situation converge. In <u>Silvestri</u>, the plaintiff did not destroy the evidence for "two to three months, or more" following the accident which was the subject of the case. <u>Id.</u> Further, the plaintiff had already retained counsel and had decided not only to file a lawsuit, but had decided which defendants that he intended to sue. <u>Id.</u> at 592-93. This is not the case here, as the crib was destroyed and disposed of less than 24 hours following J.G.'s death. Thus, spoliation is not found and the Wal-Mart defendants' motion for summary judgment is likewise dismissed on this ground.

D. <u>Punitive Damages</u>

The Wal-Mart defendants also argue that the plaintiff cannot present sufficient evidence to allow her claim for punitive damages to go to a jury against the Wal-Mart defendants. To this point,

this Court agrees and will grant summary judgment for the Wal-Mart defendants as to the plaintiff's punitive damages claim.

Punitive damages are intended to act as punishment for serious violations of civil obligations. They are only to be awarded in situations of gross wrongdoing on the part of a defendant, and the burden of proving the appropriateness of such damages is on the plaintiff. Mayer v. Frobe, 40 W. Va. 246 (1895). In order to satisfy this burden at the point of summary judgment, the plaintiff must present evidence which would allow a reasonable jury to conclude that the Wal-Mart defendants committed a wrongful act "maliciously, wantonly, mischievously, or with criminal indifference to civil obligations." Peters v. Rivers Edge Mining, Co., 224 W. Va. 160, Syl. pt. 3. The burden for showing that punitive damages are warranted is a high one, and the plaintiff has not satisfied it here.

Initially, it is noted that the plaintiff concedes that she cannot establish a negligence or breach of warranty claim against the Wal-Mart defendants, seemingly conceding that she cannot establish any affirmative wrongdoing on their part, much less wrongdoing to the level necessary for punitive damages. Further, this Court cannot find any evidence of wanton or malicious conduct on the part of these defendants. Finally, in the briefing of the Wal-Mart defendants' motion for summary judgment, the plaintiff does not address or offer any opposition to the argument that

16

punitive damages cannot be established.  Under Anderson, it was found that a party opposing summary judgment cannot simply rest upon the allegations of her complaint to defeat such a motion, but must "set forth specific facts showing that there is a genuine issue for trial."  477 U.S. at 248.  As such, the plaintiff has failed to carry her burden to allow her claim for punitive damages to go before a jury, and the Wal-Mart defendants' motion for summary judgment is granted with regard to this claim.

## V.  Conclusion

For the reasons stated above, the Wal-Mart defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.  With regard to the plaintiff's negligence and breach of warranty claims against the Wal-Mart defendants, summary judgment is GRANTED for the movants, and these claims are hereby DISMISSED against defendants Wal-Mart Stores East, LP and Wal-Mart Stores, Inc.  With regard to the plaintiff's strict products liability claims against the Wal-Mart defendants, summary judgment is DENIED.  With regard to the movants' contention of spoliation, summary judgment is DENIED.  With regard to the plaintiff's claim for punitive damages against the movants, summary judgment is GRANTED, and this claim is hereby DISMISSED against defendants Wal-Mart Stores East, LP and Wal-Mart Stores, Inc.

Finally, pursuant to Federal Rule of Civil Procedure 4(m), this Court hereby DISMISSES WITHOUT PREJUDICE, the unserved John

Doe defendants named in the plaintiff's complaint. Federal Rule of Civil Procedure 4(m) allows this court to dismiss, <u>sua sponte</u>, unserved defendants after 120 days following the filing of the complaint. The plaintiff's complaint in this case was filed in the Circuit Court of Ohio County on January 15, 2010, and was removed to this Court on February 19, 2010. As the complaint was filed over two years before this memorandum opinion and order, this court has the power to, and does dismiss these unserved defendants without prejudice under Federal Rule of Civil Procedure 4(m).

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    January 20, 2012

<pre>                                    /s/ Frederick P. Stamp, Jr.
                                    FREDERICK P. STAMP, JR.
                                    UNITED STATES DISTRICT JUDGE</pre>